55 N.J. Super. 514 (1959)
151 A.2d 68
HERBERT V. COLLINS, PLAINTIFF,
v.
LOUISE YANCEY AND TREELY YANCEY, JR., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 4, 1959.
*516 Mr. Morris Brown argued the cause for the plaintiff (Messrs. Wilentz, Goldman, Spitzer & Sills, attorneys).
Mr. Augustus S. Dreier argued the cause for the Director of the Division of Motor Vehicles in the Department of Law and Public Safety.
BARGER, J.C.C. (temporarily assigned).
On September 7, 1955, about 10:30 P.M., the plaintiff, a pedestrian, was using the crosswalk crossing U.S. Route No. 1, also known as East Edgar Road, at its intersection with Clinton Street, in the City of Linden, New Jersey. The plaintiff was crossing with the green light and was struck by a motor vehicle operated on U.S. Route No. 1 in a southerly direction and which motor vehicle was operated by the defendant, Treely Yancey, Jr., and owned by the defendant, Louise Yancey, both of said defendants being residents of the State of Pennsylvania and uninsured. The plaintiff was knocked down and, as a result of severe injuries sustained, was taken to a hospital in the City of Elizabeth and there confined for a period of time. Upon his release was confined to the home of his sister and he was unable to work for a considerable period and has been permanently injured.
The action proceeded to trial, without any appearance at the trial by the defendants. Defendants were defended by an attorney representing the Director of the Division of Motor Vehicles. The complaint as to the defendant, Louise Yancey, was dismissed and the trial resulted in a judgment in favor of the plaintiff and against the defendant, Treely Yancey, Jr., in the sum of $5,500 and costs, on July 9, 1958.
The plaintiff, otherwise qualified, and now claiming to be a qualified resident of the State of New Jersey, as required under the provisions of N.J.S.A. 39:6-62, a section of the Unsatisfied Claim and Judgment Fund Law, now makes application under N.J.S.A. 39:6-69, in a summary manner, for an order directing payment to him out of the *517 Fund of the maximum sum authorized by N.J.S.A. 39:6-69(a) in the sum of $5,000, exclusive of interest and costs. This section was amended to increase the amount by chapter 99 of the Laws of 1958. However, this increase was not effective until January 1, 1959 under the provisions of that law and, therefore, the amount of recourse, if any, of the plaintiff is not affected thereby.
As the State of Virginia does not afford recourse of any substantial similar character to residents of this State, the plaintiff's right to the recourse sought rests entirely upon a finding that he was a qualified resident of New Jersey within the meaning of the statute at the time of the accident, reciprocity being granted only under N.J.S.A. 39:6-62 to residents of other states, territories and countries in which similar legislation provides such recourse of a similar character to residents of this State. Betz v. Director of Division of Motor Vehicles, 27 N.J. 324 (1958).
The proofs submitted by the plaintiff on the issue of his residence under the statute consists of his testimony at the trial held on October 28, 1957, and affidavits dated December 9, 1958, February 7, 1959 and March 11, 1959. The facts set forth in these proofs are not controverted in behalf of the Director.
The question for the determination of this court is whether the plaintiff was a qualified resident within the meaning of the statute at the time of the accident.
From the proofs of the plaintiff it appears that the plaintiff was born and lived in Raleigh, North Carolina, for many years and thereafter moved to Norfolk, Virginia, and resided for many years in that city with a sister. The plaintiff secured employment in Norfolk as a cook in a restaurant and worked there at that occupation for a period of about seven years until this business was terminated. In order to secure employment, the plaintiff left Norfolk, went to New Castle, Pennsylvania, and obtained similar employment in that city for about six weeks; and then, through friends residing in the City of Linden, New Jersey, learned of *518 an employment opportunity in that city and came to Linden sometime in March 1955, approximately five months prior to the date of the happening of the accident set forth. In Linden the plaintiff was employed as a cook in a diner situated on U.S. Route No. 1 and was so employed at the time of the accident. The plaintiff moved all of his possessions to Linden at the time of the commencement of his employment, and in that city occupied a rented room, with another man, at 12 East Edgar Road, and so occupied that premises on the date of the accident. It was customary for the plaintiff to have his meals at the diner in which he was employed, and he was proceeding to his place of employment at the time the accident occurred.
After leaving the hospital in Elizabeth, where he was confined for several weeks as a result of his injuries, he returned to reside with his sister in Norfolk, Virginia, and is now residing in that city. In his testimony at the time of trial the plaintiff refers to returning home. It is his contention, from his affidavits filed, that he had to return to the home of his sister because he was incapacitated as a result of the injuries sustained and was to be confined to his bed and to the house for some time, and that he was unable to do this or secure the proper care required under the circumstances in this State, and that his sister offered this assistance until his recovery status permitted him to do otherwise.
The various definitions found in the many court decisions of this country of the word "residence" indicate a very wide range of interpretations of the meaning of this term that almost defy classification in any satisfactory manner. The word "residence" is a word whose statutory meaning must largely be determined from the purpose and context of the statute involved. The various definitions and interpretations apparently result from the fact that the meaning of the word in most cases depends largely upon a finding of fact as to the intention of the individual concerned. A mental process can only be determined by the *519 acts, statements and conduct of the individual involved, with due regard to the general circumstances existing. In construing the meaning of the term "qualified person" as set forth in the Unsatisfied Claim and Judgment Fund Law, it is necessary to consider the objectives and the intent of the Legislature thereunder. The statute is social legislation and is to be liberally construed in order to advance the remedy, with due regard for the proper protection of the Fund against fraud or imposition, so that all who are within the defined classification may receive relief as a matter of the social policy which is the underlying motivation for the passage of the statute. Giles v. Gassert, 23 N.J. 22 (1956). It is generally recognized that there is an economic hardship resulting to those persons referred to in the statute who, without any fault on their part, suffer losses through motor vehicle accidents as the result of the negligence of another, and for which losses there is no compensation resulting through any insurance coverage. It is reasonable to contemplate that such losses do in many cases have an adverse effect upon the public welfare in requiring the furnishing, at public expense, of hospital, medical and welfare care and attention.
It has been held that the issue of residence is a proper one for the court to determine. Giacobbe v. Gassert, 51 N.J. Super. 111 (App. Div. 1958), reversed on other grounds in 29 N.J. 421 (1959). In the Giacobbe case the Appellate Division affirmed the finding of the trial judge as to the issue of residence and qualified the plaintiff in that case for recourse to the Fund, the term qualified person not being defined. The case was certified to the Supreme Court and reversed on other grounds which did not disturb the finding of the trial judge as to the issue of residence. The facts as to residence in the Giacobbe case are very similar to the facts as to residence here, except that the plaintiff in the Giacobbe case was in the State of New Jersey for a longer period of time and remained in this State after his release from a hospital. In the Giacobbe *520 case there was conflicting evidence on the residence issue; however, there is no such conflicting evidence in this case.
The Fund argues that the plaintiff's statements in his testimony at the trial, to the effect that after leaving the hospital in Elizabeth, New Jersey, he returned to his home, indicates his intention not to surrender his residence at Norfolk, Virginia, and that his presence in the State of New Jersey was transitory in character. The testimony of the plaintiff on this point on cross-examination is as follows:
"Q. After you came out of the hospital, where did you go, Mr. Collins? A. Norfolk, Virginia.
Q. That is your home, isn't it? A. That's right.
Q. Did you ever live in New Jersey, except temporarily? A. Sir?
Q. Did you ever live in New Jersey? A. No, sir, I just came up here. I had been working here around three months when this happened.
Q. And New Jersey wasn't your home? A. No, it is not originally my home, no, sir.
Q. Well, you were living at a boarding house? A. Rooming house.
Q. You didn't eat your meals there? A. No, I ate at the restaurant.
Q. You just slept there? A. Yes, sir.
Q. What did you do, pay them so much a week for your room? Yes.
Q. How much a week did you pay? A. Eight dollars.
Q. Now, where is this rooming house? A. It is on 12 Edgar Road."
The above evidence is some evidence of the intent of the plaintiff to retain his domicile at the home of his sister in Norfolk, Virginia. The evidence and the answers of the plaintiff to interrogatories indicate that his usual occupation was that of a cook and that he had been employed in this capacity over the past several years in many cities, from New York to Norfolk, Virginia.
A person may have several residences or places of abode. However, he can only have one domicile at one time. Domicile of choice is essentially a question of residence and intention, of factum and animus. A person may have his residence in one place with his domicile in another. Every *521 person, under all circumstances and conditions, is deemed to have a domicile somewhere. The terms "domicile" and "residence" are not convertible terms or synonymous. In a strict legal sense the domicile of a person is the place where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. It is not uncommon in our way of life for persons to have one or more residences based on reasons of health, society, business or employment, without in any wise relinquishing their domicile. Cromwell v. Neeld, 15 N.J. Super. 296 (App. Div. 1951); Kurilla v. Roth, 132 N.J.L. 213 (Sup. Ct. 1944).
The reference of the plaintiff in his testimony to his returning home, meaning the home of his sister in Norfolk, Virginia, after his release from the hospital, does not appear to this court to be decisive as to the issue involved, because of the change in his circumstances resulting from the severe injuries sustained and his need for personal attention and care which he could not secure in this State. It appears to this court that it is a normal decision for a person to return to the place from whence he came when in trouble and difficulty and in seeking that help and assistance which is customarily provided by friends and relatives. Most persons do not understand the technical legal differences and significance in the use of words denoting domicile, residence or abode, or words of similar import. To most persons they have a somewhat similar meaning, except that the term "domicile" does convey a meaning of more permanency than the word "residence." Many persons have a hope and desire to return some day to some place of memory and affection for varied reasons. This does not in any way change their present status of residence or domicile, or mean that the fulfillment of such hope and desire would be done with any permanent change intended. The true intent would have to be determined at the time by the acts, statements and conduct of the individual involved, as viewed in the light of all the circumstances.
*522 The intention of the plaintiff, formed after the date of the accident, to return to Norfolk, Virginia, would not disqualify him under the statute, because the test is residence on the date of the accident. It appears to the court that such intention was formed somewhat under duress, being the circumstances in which the plaintiff found himself as a result of the injuries suffered in this accident. The language of the plaintiff referred to, and his actual return to the home of his sister in Norfolk, are only some facts to be considered with all of the other evidence in determining the plaintiff's residence on the date of the accident. Under the circumstances involved, it appears that the plaintiff made the only practical decision available to him at the time and that it does not affect his frame of mind existing at the time of the accident.
The court, considering all of the evidence, concludes that the plaintiff was not a traveler or transient, within the meaning of those terms, at the time of the accident. Considering the intent and purpose of the Legislature in enacting the statute concerned, the court concludes that at the time of the happening of the accident the plaintiff was a qualified resident of the City of Linden, in this State, within the intended meaning of the statute, and that his residence had that permanency which qualifies him for the recourse contemplated by the statute. The court will accordingly sign an order directing payment to the plaintiff from the Fund of the maximum amount of recourse, being the sum of $5,000, exclusive of interest and costs. A judgment may be presented accordingly.