183 N.J. Super. 494 (1982)
444 A.2d 610
MONMOUTH MEDICAL CENTER, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
HAU KWOK; COUNTY OF MONMOUTH; STATE OF NEW JERSEY; DEPARTMENT OF HUMAN SERVICES; ANN KLEIN, AS COMMISSIONER OF THE DEPARTMENT OF HUMAN SERVICES; DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES; THOMAS M. RUSSO, AS ACTING DIRECTOR OF THE DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 9, 1982.
Decided March 26, 1982.
*495 Before Judges BOTTER, ANTELL and FURMAN.
Giordano, Halleran & Crahay, attorneys for appellant (Sam Maybruch on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondents (Judith A. Yaskin, former Acting Attorney General of New Jersey; Andrea M. Silkowitz, Deputy Attorney General, of counsel; Ivan J. Punchatz, Deputy Attorney General, on the brief).
The opinion of the court was delivered by ANTELL, J.A.D.
Defendant Hau Kwok, an illegal alien, was admitted on an emergency basis to plaintiff hospital on January 1, 1978 to be treated for a stroke. He was confined until March 17, 1978 when he was discharged and thereafter deported by the United States Immigration Service to Hong Kong. His hospital bill of $16,523.55 has not been paid.
In the Law Division plaintiff sued, among others, the State of New Jersey under the New Jersey Medical Assistance and Health Services Act (Medicaid), N.J.S.A. 30:4D-1 et seq., for *496 payment of plaintiff's claim for services rendered Kwok. Prior thereto plaintiff had informally notified the state agencies involved of its intention to file a claim for payment on behalf of Kwok and was told that Medicaid coverage was not provided for illegal aliens. N.J.A.C. 10:94-3.2, promulgated by the State Division of Medical Assistance and Health Services (DMAHS), the agency through which the Medicaid program is administered, provides:
The applicant must be a resident of the United States who is either a citizen or an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law.
The State conceded that under the foregoing regulation, had formal application for payment been made by plaintiff, it would surely have been denied. Based on the unmistakable import of the regulation and the State's concession, the Law Division concluded that the requirement of final state action had been satisfied  a determination which the State does not here challenge. The only issue projected in the Law Division on cross-motions for summary judgment was, therefore, as to the constitutionality of the regulation. Recognizing that original jurisdiction to review the validity of any rule promulgated by a state agency rests with the Appellate Division, R. 2:2-3(a), the trial judge acted under R. 1:13-4(a) to order the matter transferred to this court for adjudication.
Plaintiff urges that we declare the Medicaid regulation invalid on the ground that it "is discriminatory and in contravention of the equal protection clause of the United States Constitution." A brief statement of the legislative and administrative circumstances surrounding the regulation is necessary.
The Medicaid program is jointly funded by State and Federal Governments and enables participating states to furnish assistance to individuals whose economic resources are insufficient to meet the cost of necessary medical care. States wishing to participate in the program must submit a plan for approval by the Secretary of Health and Human Services (HHS), and upon approval the state becomes entitled to federal financial assistance for funding the program. 42 U.S.C.A. §§ 1396 et seq.
*497 Under the Medicaid program in New Jersey the Commissioner of the Department of Human Services is authorized to issue through DMAHS all rules, regulations and administrative orders necessary to secure maximum federal financial participation for the program. N.J.S.A. 30:4D-7. Obviously, to obtain HHS approval the state plan must be prepared in accordance with federal regulations. "Although participation in the Medicaid program is entirely optional, once a State elects to participate, it must comply with the requirements of Title XIX." Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2690, 65 L.Ed.2d 784, 794, reh. den. 448 U.S. 917, 101 S.Ct. 39, 65 L.Ed.2d 1180 (1980). Also see Monmouth Medical Center v. State, 80 N.J. 299, 302-303, cert. den. 444 U.S. 942, 100 S.Ct. 297, 62 L.Ed.2d 308 (1979). However, a participating state is not required under Title XIX to pay for those medical services for which federal reimbursement is unavailable. Harris, supra, 448 U.S. at 309, 100 S.Ct. at 2684.
With regard to citizenship requirements for Medicaid eligibility, federal regulations provide for the payment of benefits only to otherwise eligible residents of the United States who are either citizens or "[a]liens lawfully admitted for permanent residence or permanently residing in the United States under color of law, including any alien who is lawfully present in the United States under section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act." 42 C.F.R. § 435.402. The clear intent and purpose of the foregoing federal limitation is that it should be mandatory upon participating states. As was stated in the "Notice of Proposed Rulemaking," 38 Fed.Reg. 16,911 (June 27, 1973):
After consideration of the views presented and of the thrust of recent legislation, we are changing the proposal to require that a State plan must include any otherwise eligible resident of the United States who is either a citizen or an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law; and must exclude any individual who is not lawfully in this country. [Emphasis supplied]
In the preamble to the cited regulation, following receipt of public comments concerning its adoption, it was stated that

*498 ... [r]equiring inclusion of illegal aliens, or leaving the matter to State option would be inconsistent with title III of Pub.L. 92-603, which establishes a Federal program of Supplemental Security Income for the Aged, Blind, and Disabled (SSI) that excludes aliens not lawfully residing in this country. Accordingly, the regulations as proposed on June 27, 1973, are hereby adopted. 38 Fed.Reg. 30,259 (November 2, 1973).
Since Hau Kwok was admittedly an illegal alien when he entered plaintiff hospital both federal and state regulations clearly precluded his eligibility for Medicaid benefits. Mathews v. Diaz, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), directly addressed the constitutionality of the discrimination thus practiced on facts so nearly identical to these as to leave no doubt as to its controlling applicability herein. Presented to the Supreme Court in Mathews was an equal protection attack on a federal statutory provision conditioning an alien's eligibility for Medicare benefits on continuous residence in the United States for a five-year period and admission for permanent residence. The court rejected the attack and held the statute constitutional. The basic principle which it conceived as governing was that an act of Congress which differentiated between citizens and aliens is not necessarily invidious. Proceeding therefrom it developed its rationale in language from which we quote at length as follows:
In particular, the fact that Congress has provided some welfare benefits for citizens does not require it to provide like benefits for all aliens. Neither the overnight visitor, the unfriendly agent of a hostile foreign power, the resident diplomat, nor the illegal entrant, can advance even a colorable constitutional claim to a share in the bounty that a conscientious sovereign makes available to its own citizens and some of its guests. The decision to share that bounty with our guests may take into account the character of the relationship between the alien and this country: Congress may decide that as the alien's tie grows stronger, so does the strength of his claim to an equal share of that munificence.
The real question presented by this case is not whether discrimination between citizens and aliens is permissible; rather, it is whether the statutory discrimination within the class of aliens  allowing benefits to some aliens but not to others  is permissible. We turn to that question.
For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. Since decisions in these matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and *499 economic circumstances, such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary. This very case illustrates the need for flexibility in policy choices rather than the rigidity often characteristic of constitutional adjudication. Appellees Diaz and Clara are but two of over 440,000 Cuban refugees who arrived in the United States between 1961 and 1972. And the Cuban parolees are but one of several categories of aliens who have been admitted in order to make a humane response to a natural catastrophe or an international political situation. Any rule of constitutional law that would inhibit the flexibility of the political branches of government to respond to changing world conditions should be adopted only with the greatest caution: The reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization.
Since it is obvious that Congress has no constitutional duty to provide all aliens with the welfare benefits provided to citizens, the party challenging the constitutionality of the particular line Congress has drawn has the burden of advancing principled reasoning that will at once invalidate that line and yet tolerate a different line separating some aliens from others. In this case the appellees have challenged two requirements  first, that the alien be admitted as a permanent resident, and, second, that his residence be of a duration of at least five years. But if these requirements were eliminated, surely Congress would at least require that the alien's entry be lawful; even then, unless mere transients are to be held constitutionally entitled to benefits, some durational requirement would certainly be appropriate. In short, it is unquestionably reasonable for Congress to make an alien's eligibility depend on both the character and the duration of his residence. Since neither requirement is wholly irrational, this case essentially involves nothing more than a claim that it would have been more reasonable for Congress to select somewhat different requirements of the same kind. [426 U.S. at 80-83, 96 S.Ct. at 1891-1893, footnotes omitted]
Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), relied upon by plaintiff, furnishes no support for its position on this appeal. It was specifically distinguished in Mathews v. Diaz, supra, as holding only that
... state statutes that deny welfare benefits to resident aliens, or to aliens not meeting a requirement of durational residence within the United States, violate the Equal Protection Clause of the Fourteenth Amendment and encroach upon the exclusive federal power over the entrance and residence of aliens. [Id. at 84, 96 S.Ct. at 1893]
It further noted that the decision was consistent with its holding in the case before it that the subject matter was more properly the business of the political branches of the Federal Government, rather than the states or the judiciary, to regulate the conditions of entry and residence of aliens.
*500 Concluding, therefore, that the state regulation in question, N.J.A.C. 10:94-3.2, is not offensive to the constitutional guarantee of equal protection, the final action of the state agency in declining the payment of benefits is affirmed. In view of this disposition we find it unnecessary to consider the question of plaintiff's standing to raise the constitutional question.