254 N.J. Super. 194 (1992)
603 A.2d 139
VIOLA DAS, PLAINTIFF,
v.
ASIT K. DAS, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Middlesex County.
Decided January 14, 1992.
*195 Robert P. Donovan for plaintiff (Fox and Fox, attorneys).
Stuart Surick for defendant.
WOLFSON, J.S.C.
The novel jurisdictional issue to be decided in this matrimonial action is whether the plaintiff's nonimmigrant alien status precludes her from obtaining a New Jersey divorce.
Plaintiff Viola Das and defendant Asit Das, citizens of India, entered the United States lawfully in March 1990, pursuant to validly issued visitors' visas.[1] They immediately took up residence with their son in Jersey City, New Jersey, later moving to their own quarters in that city. Ultimately, they executed a one (1) year lease in a garden apartment complex in New Brunswick in order to be closer to a retail business purchased by them in March 1991. Viola Das continues to reside in New Brunswick.
*196 The parties separated in May 1991. In September, Viola Das initiated divorce proceedings, eventually filing a motion for pendente lite restraints. In response, Asit Das filed a cross motion to dismiss the divorce action based upon his wife's legal inability to establish "bona fide residence" within the meaning of the New Jersey divorce statute.[2] Supplemental briefs addressing this issue were filed, and oral arguments were presented to the court.
It is well established that "a bona fide resident" in this context means a "domiciliary." Voss v. Voss, 5 N.J. 402, 406-407, 75 A.2d 889 (1950); Raybin v. Raybin, 179 N.J. Super. 121, 126-127, 430 A.2d 953 (App.Div. 1981). The "two requisites without which no domicile of choice can be established" are: (1) physical presence; and (2) a concomitant unqualified intention to remain permanently and indefinitely. Gosschalk v. Gosschalk, 48 N.J. Super. 566, 573, 138 A.2d 774 (App.Div.), aff'd o.b., 28 N.J. 73, 145 A.2d 327 (1958). Once there is physical presence, the key element is the intention to acquire a new domicile, rather than the purpose for making such a change. Gosschalk, supra, 48 N.J. Super. at 573, 138 A.2d 774.
In the present case, the defendant confirmed through his deposition testimony that he and his wife formulated an intention to remain in the United States "indefinitely", subsequent to their arrival here. His wife's similar contention, especially when viewed in conjunction with the objective and undisputed *197 facts,[3] compels the conclusion that her domicile was and is New Jersey, unless that result has otherwise been precluded by operation of law.
Thus, the question is whether the plaintiff is legally disqualified from establishing domicile in New Jersey, despite her clearly manifested intention to do so. The closest New Jersey case to address the subject, Gosschalk v. Gosschalk, 48 N.J. Super. 566, 138 A.2d 774 (App.Div.), aff'd o.b., 28 N.J. 73, 145 A.2d 327 (1958), is helpful but not dispositive. There, the appellate division, determined that a nonimmigrant alien who held a provisional "treaty trader" visa and who had otherwise established an intention to make New Jersey his domicile by procuring visa extensions and by placing his family on the immigration "quota list", satisfied the jurisdictional prerequisites of N.J.S.A. 2A:34-10. In doing so, however, the court cautioned that:
[T]he only factor which might render such an intention inoperative would arise where a respondent's resolution to make New Jersey his permanent home would make his presence under the provisional visa illegal, so that his presence within the State "in violation of the immigration laws will not be considered as residence." (emphasis supplied). [Id. 48 N.J. Super. at 574-75, 138 A.2d 774.]
In the present case, defendant seizes upon this language to defeat the court's jurisdiction, alleging that his wife's presence in New Jersey is, in fact, violative of federal immigration laws and is illegal by virtue of: (1) the expiration of her visitor's visa and the withdrawal of her request for political asylum;[4] and (2) *198 her failure to maintain the conditions of the visa.[5]
This court is of the view that neither the expiration of plaintiff's visitor's visa nor her continued presence following the withdrawal of her application for political asylum constitute such violations of the immigration laws as should negate her intention to make New Jersey her permanent home.[6]
In Williams v. Williams, 328 F. Supp. 1380, 1383 (D.V.I. 1971) the federal district court rejected the contention that violations of the federal immigrations laws presented an "insuperable barrier" to a party's forming an actual intent to establish domicile. As noted by the district court:
[T]he fact that he may be illegally in the country and deportable would not preclude him from forming an actual intent to make his home here. * * * The enforcement of immigration laws properly remains with those to whom it is entrusted by law and does not need in aid of enforcement the judicially created civil disability of exclusion from our divorce courts. * * * To deny an alien access to our divorce courts on the sole ground that he may be in violation of an immigration law would be to deny both due process and the equal protection of the laws. Such a denial would attach a civil disability to some aliens without the prior benefit of the procedures designed for the purpose of enforcing the immigration laws. [Id. at 1383.]
*199 See also, In the Matter of the Marriage of Pirouzkar and Pirouzkar, 51 Or. App. 519, 626 P.2d 380, 383-384 (1981) (consequences of immigration law not pertinent to the issue of domicile for purposes of divorce jurisdiction).
Nor is the wife's failure to maintain the conditions of her visa fatal to her ability to establish New Jersey as her domicile. Elkins v. Moreno, 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978) touched upon but did not decide whether federal law prevented the establishment of domicile by aliens who are required by their visas to maintain a foreign residence. 435 U.S. at 663-664, 98 S.Ct. at 1348-1349, 55 L.Ed.2d at 627. Although an alien who fails to maintain the conditions attached to a status may be deportable, given the uncertainty of knowing when, if ever, deportation proceedings will be commenced, this court is persuaded that no legal disability precluding a change of domicile should exist.[7] Indeed, even where an alien has misrepresented his true intent at the time of entry and intends, contrary to the condition of the visa, to abandon his foreign residence, such an alien is not precluded as a matter of federal law from forming an actual intent to change his or her domicile. See Williams v. Williams, supra, 328 F. Supp. at 1383.[8]
*200 The conclusion that federal immigration law does not preclude a state from allowing nonimmigrant aliens to establish a new domicile, is also in accord with the overwhelming weight of authority in other jurisdictions. In accord, Williams, supra; Pirouzkar, supra; Bustamante, supra; Abou-issa v. Abou-issa, 229 Ga. 77, 189 S.E.2d 443, 445 (Ga. 1972); Rzeszotarski v. Rzeszotarski, 296 A.2d 431, 435 (D.C.App. 1972); Alves v. Alves, 262 A.2d 111, 115 (D.C.App. 1970); Nicolas v. Nicolas, 444 So.2d 1118, 1120 (Fla. Dist. Ct. App. 1984); Babouder v. Abdennur, 41 Conn.Sup. 258, 566 A.2d 457, 461 (1989); and see generally, annot. 51 A.L.R.3d 223 (1973).
An inflexible rule such as that espoused by defendant would require state trial courts to assume (or possibly usurp) the very function of the Federal Immigration and Naturalization Service. The adjudication of potentially complex questions of federal immigration law and policy is better left to that Federal Agency. Indeed, one can easily envision the difficulties inherent in resolving alleged violations of the immigration laws which are not so apparent, or more probably, require determinations and/or the implementation of an ever evolving federal immigration policy, which itself may be affected by changes in the political climate. Moreover, even where a purported violation of immigration law is clear, or is conceded to exist, one cannot predict with any certainty when, if ever, deportation proceedings would be commenced.
Enforcement of immigration laws is the function of the Federal government. The determination of a party's domicile, on the other hand, must be resolved in accordance with state decisional law. Applying the undisputed facts and circumstances of this case to that law, plaintiff has conclusively demonstrated an intention to make New Jersey her domicile, thus empowering this court to adjudicate the complaint for divorce. Accordingly, defendant's cross motion to dismiss the complaint for lack of jurisdiction is denied.
NOTES
[1] The Immigration Naturalization Act of 1952, 8 U.S.C.A. Sec. 1101, et seq., defines several classes of nonimmigrant aliens, including visitors, whose status is generally defined in 8 U.S.C.A. Sec. 1101(a)(15)(B). Both husband and wife entered the United States pursuant to this section, although the husband appears to possess a B-1/B-2 visa granting him certain privileges over and above those granted his wife pursuant to her B-2 visa. The distinction, if any, is irrelevant to the court's disposition of the within motion to dismiss the divorce complaint.
[2] That statute, N.J.S.A. 2A:34-10, provides:

Jurisdiction in actions for divorce, ... may be acquired when process is served, ... and
1. When, at the time the action arose, either party was a bona fide resident of this State, and has continued so to be down to the time of the commencement of the action; except that no action for absolute divorce shall be commenced for any cause other than adultery, unless one of the parties has been for the 1 year next preceding the commencement of the action a bona fide resident of this State; or
2. When, since the cause of action arose, either party has become, and for at least 1 year next preceding the commencement of the action has continued to be, a bona fide resident of this State.
[3] These undisputed facts include: (a) the parties's physical presence in New Jersey for approximately eighteen (18) months as of the filing of the complaint; (b) the execution of a ten (10) year lease for a retail business purchased in March 1991; (c) the execution of a one (1) year lease for a residential apartment in New Brunswick, New Jersey; (d) the wife's obtaining a New Jersey driver's license; (e) the wife's obtaining a social security card; (f) the parties' joint application for political asylum in November 1990; and (g) the wife's request for a student visa.
[4] Apparently, on the advice of prior counsel, the parties sought political asylum, purportedly to avoid returning to Kuwait, their residence for the preceding ten (10) years, which was then under siege. Ultimately, their joint application was unilaterally withdrawn by Asit Das, a circumstance argued by him to render plaintiff's continued presence in this country illegal and thus within the purview of the Gosschalk exception.
[5] The present circumstances are thus distinguishable from those in which the party claiming "bona fide residence" fraudulently or illegally entered the country in the first instance. See Buscema v. Buscema, 20 N.J. Super. 114, 89 A.2d 279 (Ch.Div. 1952) (entry contrary to immigration laws is incompatible with a bona fide residence in New Jersey). Even were this not so, the rationale of this trial level opinion has been seriously undermined by more recent case law, suggesting that the enforcement of immigration law properly remains with those to whom it is entrusted by law, there being no rational basis for intermingling immigration and divorce law. Compare, Williams v. Williams, 328 F. Supp. 1380 (D.V.I. 1971); See also, Alves v. Alves, 262 A.2d 111, 115 (D.C.App. 1970); and see, Bustamante v. Bustamante, 645 P.2d 40, 42 (Utah 1982).
[6] Although the parties' joint request for political asylum may have been legally deficient, the application itself is compelling evidence of the parties' then (November 1990) shared intent to remain in this country indefinitely.
[7] This is especially so in light of the "adjustment of status" mechanism which is available under the Immigration and Naturalization Act of 1952, as amended, 8 U.S.C.A. Sec. 1255, which permits aliens already present in the United States to apply for permanent resident status. See Elkins v. Moreno, 435 U.S. at 664, 98 S.Ct. at 1348, 55 L.Ed.2d at 627; Bustamante v. Bustamante, 645 P.2d 40, 42 (Utah 1982).
[8] The Colorado Court of Appeals has suggested in Seren v. Douglas, 30 Colo. App. 110, 489 P.2d 601 (Colo. App. 1971) that federal law rendered a nonimmigrant alien incapable of establishing domicile in this country so long as the alien's visa was issued with a requirement that a foreign residence, which he or she had no intention of abandoning, be maintained. However, that requirement was deemed to be terminated if the alien remained in this country after his or her visa expired. In either circumstance plaintiff Viola Das would be capable of forming the requisite intent to establish a New Jersey domicile.