869 A.2d 969 (2004)
376 N.J. Super. 223
Victor Manuel CABALLERO, Plaintiff,
v.
Ricardo MARTINEZ, Leroy Smith, The Unsatisfied Claim And Judgment Fund Board, Karen L. Suter, Commissioner of Insurance of the State of New Jersey, Defendants.
Superior Court of New Jersey, Law Division, Monmouth County.
Decided June 4, 2004.
*970 Victor M. Covelli, Belmar, for plaintiff.
Hoagland, Longo, Moran, Dunst & Doukas, L.L.P. (Jeffrey C. Maziarz), New Brunswick, for defendants The Unsatisfied Claim and Judgment Fund Board and Holly Bakke, Commissioner of Insurance of the State of New Jersey.
PERRI, J.S.C.
Defendants Unsatisfied Claim and Judgment Fund Board ("UCJF") and Holly Bakke, Insurance Commissioner of the State of New Jersey, seek a dismissal of plaintiff's claim for non-economic damages on the basis that plaintiff does not meet the definition of a "qualified person" as set forth in N.J.S.A. 39:6-62. The issue presented is whether an undocumented alien, who had been in New Jersey for a period of five months and was subject to deportation at any time, was capable of forming the requisite reasonable intent to establish residency for purposes of recovering benefits from the UCJF.
Plaintiff Victor Manuel Caballero was injured in an accident on August 8, 2001, in Lakewood, Ocean County, while a passenger in an automobile operated by defendant Ricardo Martinez. The accident occurred when Martinez veered off the roadway and struck a parked tractor-trailer.[1] When it was learned that the Martinez vehicle was both unregistered and uninsured, plaintiff initiated a claim against the UCJF for PIP benefits[2] and non-economic damages pursuant to N.J.S.A. 39:6-65.
The UCJF was created as a trust fund to provide a measure of relief to "persons who sustain losses or injury inflicted by financially irresponsible or unidentified operators of motor vehicles, where such persons would otherwise be remediless." Douglas v. Harris, 35 N.J. 270, 279, 173 A.2d 1, 5-6 (1961). The Act creating the Fund is to receive liberal interpretation, giving due regard to fulfillment of the essential legislative design while protecting the UCJF from possible fraud and abuse. Red Star Express Lines Corp. v. DeStefano, 104 N.J.Super. 102, 105, 248 A.2d 697, 699 (App.Div.1968). "The public interest demands that the Fund ... be administered in a fashion to assure that only those persons legitimately entitled to participate in its benefits are paid therefrom. This is a duty imposed by public policy and owed to the contributors as well as the general public." Douglas, supra, 35 N.J. at 279, 173 A.2d at 6.
Although its purpose is to provide the kind of protection a liability insurance policy would provide,[3] "[t]he Fund is not intended to give financial relief to every claimant. The claimant must be one intended to be protected and he must clearly *971 demonstrate that he belongs to a class for whose benefit the Fund was established." Sumner v. Unsatisfied Claim & Judgment Fund, 288 N.J.Super. 384, 386-387, 672 A.2d 731, 732 (App.Div.1996) (quoting Lopez v. Santiago, 120 N.J.Super. 394, 398, 294 A.2d 272, 274 (Dist.Ct.), rev'd on other grounds 125 N.J.Super. 268, 310 A.2d 500 (App.Div.1973)). This is consistent with New Jersey's strong public policy favoring the containment of automobile insurance rates, since the UCJF is "funded primarily by contributions assessed against insurers on the basis of insurance policies written on vehicles garaged in New Jersey." Martin v. Home Ins. Co., 141 N.J. 279, 286, 661 A.2d 808, 811 (1995).[4]
In order to pursue a claim against the UCJF, a claimant must demonstrate that he or she is a "qualified person" within the meaning of the statute. A "qualified person" is defined as
a resident of this State or the owner of a motor vehicle registered in this State or a resident of another state, territory, or federal district of the United States or province of Canada or of a foreign country, in which recourse is afforded, to residents of this State, of substantially similar character to that provided for by this act....
[N.J.S.A. 39:6-62.]
Defendants UCJF and Bakke moved for summary judgment dismissing plaintiff's claim for non-economic damages for failure to meet the definition of a "qualified person". At oral argument, the parties agreed that the only issue to be decided by the court was whether plaintiff was a resident of the State of New Jersey, within the meaning of the statute, on the date of the accident. A plenary hearing was held on May 18, 2004, to resolve this disputed issue.
The proofs showed that plaintiff had lived in his parents' home in Oaxaca, Mexico, until March of 2001, when he illegally crossed the border and entered the United States. Plaintiff's older brother, Sandro Caballero ("Sandro"), had similarly entered the United States in 1996 and was living with two cousins and "a number of acquaintances" in an apartment in Bradley Beach, Monmouth County, which was leased in a cousin's name.[5] With money provided by Sandro, plaintiff flew from California to New Jersey and joined his brother in the Bradley Beach apartment. Plaintiff, who was Seventeen years of age at the time, testified that he remained at that address until the happening of the accident on August 8, 2001.[6] During that time, plaintiff worked briefly at a restaurant and then became employed at a computer company in Lakewood.[7]
*972 Plaintiff testified that he came to New Jersey "out of necessity" because there were no good-paying jobs in Oaxaca. It was his intention and expectation to find work in the United States and to ultimately return to Mexico where his mother and sister continued to reside.[8] Plaintiff was aware that, as an undocumented alien, he could be deported at any time and he therefore wanted to earn as much money as possible before he returned, either voluntarily or involuntarily, to Mexico. Plaintiff's testimony indicated that it was not his preference to leave his home in Mexico or to relocate to New Jersey; it was done solely out of a desire to earn sufficient money to allow him to live a better life in Mexico.
Plaintiff's lifestyle prior to the happening of the accident reflected the transient nature of his presence in New Jersey. It does not appear that plaintiff brought any personal possessions with him to New Jersey nor does it appear that he accumulated (or intended to accumulate) any significant possessions prior to the happening of the accident. He testified that he lived in his cousin's apartment but was unable to produce any receipts or other documents indicating the payment of rent or any other continuing obligation with regard to the premises.[9] He did not register for school despite the fact that he had not completed his high school education in Mexico nor did he attempt to apply for resident alien status. Although plaintiff testified that it was his intention to remain in the United States for "another five years," he was unable to offer any credible explanation for this time frame other than to say that he "expected to move on to help his family."
The term "residence" denotes a degree of permanence in contrast to the mere transient staying at a given address with the formed intention of shortly going elsewhere. Continos v. Parsekian, 68 N.J.Super. 54, 60, 171 A.2d 663, 666 (App.Div.1961). "`Mere presence in a place unaccompanied with any intention to remain there for any length of time' does not constitute a residence." Id. at 60, 171 A.2d at 666 citing 17A Am. Jur., Domicil, § 9, p. 201. Plaintiff's tenuous ties to the State of New Jersey during the five months before the accident, coupled with his status as an illegal immigrant, evidence a relationship with the state that falls short of those of a bona fide resident.
At least one court has recognized that an individual's status as an illegal alien is "incompatible with a bona fide residence in New Jersey." Buscema v. Buscema, 20 N.J.Super. 114, 115, 89 A.2d 279, 280 (Ch.Div.1952). In Buscema, the court declined to hear the divorce petition of an Italian sailor who had entered the country illegally, noting that the plaintiff was under an obligation to leave the country and his continuing presence was in violation of United States immigration laws. Ibid.[10]
*973 The same is true with regard to the plaintiff in this matter. Caballero's presence in New Jersey was in direct violation of the immigration laws and could only continue as long as he could avoid detection or deportation. Without the legal ability or authority to remain in the state, plaintiff was incapable of reasonably forming the requisite intent to "remain for any length of time" in New Jersey. This is particularly true where, as here, it was the United States government, and not the plaintiff himself, who had the ability to determine the length of his stay.
This finding is not offensive to the public policy of New Jersey. While aliens, even those who are in the country illegally, are entitled to certain fundamental constitutional rights, they do not enjoy equal status with legal residents in all aspects of the law. This distinction is particularly apparent in the area of eligibility for medical and welfare benefits. In Monmouth Med. Ctr. v. Kwok, 183 N.J.Super. 494, 500, 444 A.2d 610, 613 (App.Div.1982), the Appellate Division found that the exclusion of illegal aliens from Medicaid benefits did not violate the constitutional guarantee of equal protection. In reaching its decision, the court noted:
[T]he fact that Congress has provided some welfare benefits for citizens does not require it to provide like benefits for all aliens. Neither the overnight visitor, the unfriendly agent of a hostile foreign power, the resident diplomat, nor the illegal entrant, can advance even a colorable constitutional claim to share in the bounty that a conscientious sovereign makes available to its own citizens and some of its guests. The decision to share that bounty with our guests may take into account the character of the relationship between the alien and this country: Congress may decide that as the alien's tie grows stronger, so does the strength of his claim to an equal share of that munificence.
[Id. at 498, 444 A.2d at 612.]
Extending UCJF benefits to individuals based simply upon physical presence in the State of New Jersey at or about the time of the accident would run afoul of the letter and spirit of the law. Like the plaintiff in Buscema, Caballero's relatively brief presence in New Jersey prior to the happening of the accident was in violation of the law. This status, with its attendant threat of deportation, was incompatible with the formation of any meaningful intent to become a New Jersey resident. Accordingly, defendants' motion is granted and plaintiff's complaint is dismissed in its entirety.
NOTES
[1] Summary judgment was previously granted in favor of defendant Leroy Smith, the owner and operator of the tractor-trailer, on the basis that no facts had been adduced that would indicate any negligence on his part.
[2] Partial summary judgment dismissing plaintiff's claims for PIP benefits was previously granted in favor of the UCJF. Plaintiff, who had only known Martinez for approximately two weeks before the accident, was unable to offer any proof that the vehicle in question, which bore a counterfeit Pennsylvania temporary registration, was in fact registered or principally garaged in the State of New Jersey at the time of the accident as required by N.J.S.A. 39:6-65.1.
[3] Jimenez v. Baglieri, 152 N.J. 337, 342-43, 704 A.2d 1285, 1287-88 (1998) (citations omitted).
[4] In Martin, the New Jersey Supreme Court ruled that out-of-state insurance carriers were not entitled to reimbursement from the UCJF for PIP benefits in excess of the $75,000 paid to out-of-state passengers injured in New Jersey automobile accidents. Mindful of the effect that such payments would have on the cost of insurance for New Jersey drivers, the Court reasoned that "[i]f insurers of out-of-state automobiles involved in accidents in New Jersey receive a reimbursement, they will receive what the UCJF regards as a `windfall,' funded by New Jersey insurers, and indirectly funded by New Jersey motorists, who will have to pay higher rates as a result of increased contributions to the UCJF by their carriers." Martin, 141 N.J. at 286, 661 A.2d at 811.
[5] Plaintiff's father, Moises Silva, illegally entered the United States in 1999 and was living separately from his sons in Asbury Park.
[6] The police report that was issued after the accident listed an address in Neptune for the plaintiff, Martinez and the other occupant of the Martinez vehicle. Plaintiff denied that he ever lived in Neptune and could not explain the source of this information.
[7] Plaintiff did not produce any pay stubs or other documents indicating that he paid New Jersey State Income Tax on his earnings, as would be required of a New Jersey resident.
[8] Plaintiff's desire to return to Mexico became less urgent when his mother, Herlinda Caballero, joined her husband in New Jersey in 2003.
[9] The only documentation that plaintiff produced in support of his claim that he had resided at the Bradley Beach address during the five months prior to the accident were two envelopes that his mother had mailed to him from Mexico.
[10] But see Das v. Das, 254 N.J.Super. 194, 198, 603 A.2d 139, 141-42 (Ch.Div.1992), where the court found that a plaintiff who entered the country legally, but whose visa had since expired, could maintain an action for divorce once the intention to establish a New Jersey domicile was formed. In the within matter, however, no proofs were presented that would indicate that the plaintiff intended to establish his domicile in New Jersey. To the contrary, all proofs indicated that the plaintiff remained a domiciliary of Mexico and intended to return there once he had met his economic goals in the United States (or sooner in the case of deportation).