648 A.2d 213

CHARLES MARTIN, PLAINTIFF, v. HOME INSURANCE COMPA-
NY, DEFENDANT/THIRD–PARTY PLAINTIFF/RESPON-
DENT/CROSS–APPELLANT, v. UNSATISFIED CLAIM AND
JUDGMENT FUND, THIRD–PARTY DEFENDANT/APPEL-
LANT.

EDITH M. ROBINSON, BY HER GUARDIAN, D. LEWIS MATTIE,
AND PROGRESSIVE CASUALTY INSURANCE CO., PLAIN-
TIFFS/RESPONDENTS, AND TERESA L. MATTIE, THOMAS
EVERETT ROBINSON, III, BY HIS GUARDIAN AD LITEM,
THOMAS EVERETT ROBINSON, II, D. LEWIS MATTIE, EL-
LEN MATTIE, AND ROBERT L. MATTIE, PLAINTIFFS, v. L.G.
DEWITT TRUCKING COMPANY, INC., AND COLLIE B.
ADAMS, DEFENDANTS/APPELLANTS, AND THE NEW JER-
SEY TURNPIKE AUTHORITY, DEFENDANT.

EDITH M. ROBINSON, BY HER GUARDIAN D. LEWIS MATTIE,
PLAINTIFF/RESPONDENT, v. PROGRESSIVE CASUALTY IN-
SURANCE CO., DEFENDANT/APPELLANT, AND UNSATIS-
FIED CLAIM AND JUDGMENT FUND AND SAMUEL F. FOR-
TUNATO, COMMISSIONER OF INSURANCE, DEFEN-
DANTS/RESPONDENTS, AND PRUDENTIAL PROPERTY AND
CASUALTY COMPANY, INTERVENOR.

NEW YORK LIFE INSURANCE COMPANY AND WHOLESALER–
DISTRIBUTORS INSURANCE TRUST, PLAINTIFFS/RESPON-
DENTS, v. PROGRESSIVE CASUALTY INSURANCE COMPANY,
DEFENDANT/APPELLANT, AND L.G. DEWITT TRUCKING
COMPANY, COLLIE B. ADAMS, EDITH M. ROBINSON, THE
UNSATISFIED CLAIM AND JUDGMENT FUND AND SAMUEL
F. FORTUNATO, COMMISSIONER OF INSURANCE, DEFEN-
DANTS/RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 25, 1994—Decided June 14, 1994.

Before Judges BAIME, CONLEY and VILLANUEVA.

*Elliott Abrutyn,* argued the cause for Defendant/Third Party Plaintiff/Respondent/Cross–Appellant, The Home Insurance Company (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys; *Mr. Abrutyn* and *Sandra Lawrence Paz,* on the brief).

*George J. Kenny,* argued the cause for Defendant/Appellant/Respondent Progressive Casualty Insurance Co. (*Connell, Foley & Geiser,* attorneys; *Mr. Kenny,* of counsel; *Kevin R. Gardner,* of counsel and on the brief).

*Anita Hotchkiss,* argued the cause for Respondents New York Life Insurance Company and the Wholesaler–Distributors Insurance Trust (*Porzio, Bromberg & Newman,* attorneys; *Ms. Hotchkiss,* of counsel and on the brief; *Janet A. Sullivan,* on the brief).

*Sherrie L. Gibble,* Deputy Attorney General, argued the cause for Respondent Unsatisfied Claim and Judgment Fund (*Deborah*

*T. Poritz,* Attorney General of New Jersey, attorney; and *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Ms. Gibble* on the brief).

*Cynthia K. Stroud,* argued the cause for Defendants/Appellants L.G. DeWitt Trucking Company and Collie B. Adams (*Tompkins, McGuire & Wachenfeld,* attorneys; *Ms. Stroud* and *Christopher J. Carey,* of counsel; *Ms. Stroud,* on the brief).

*Thomas P. Weidner,* argued the cause for Intervenor, Prudential Property and Casualty Insurance Company (*Jamieson, Moore, Peskin & Spicer,* attorneys; *Mr. Weidner,* of counsel; *Ross A. Lewin,* on the brief).

*Cy Goldberg & Associates,* attorneys for amicus curiae Lumbermens Mutual Casualty Company, filed a brief (*Marie L. Barnaba,* of counsel and on the brief).

*Medvin & Elberg,* attorneys for respondent D. Lewis Mattie, filed a letter brief (*Philip Elberg,* on the brief).

The opinion of the court was delivered by

VILLANUEVA, J.A.D.

This consolidated insurance action involves issues of reimbursement among payors of PIP benefits following two different automobile accidents involving separate out-of-state insurers of vehicles operated in New Jersey. One issue is whether an out-of-state automobile insurer authorized to transact business in New Jersey is entitled under New Jersey law to reimbursement from the Unsatisfied Claim and Judgment Fund ("UCJF") for medical expenses in excess of $75,000 that it paid when its insured severely injured another party in an accident in New Jersey. The other issues are whether the injured party's general health benefits insurer, who paid medical benefits, may obtain reimbursement from the out-of-state automobile insurer and whether the out-of-state automobile insurer may obtain reimbursement directly from the tortfeasors.

## A. *Robinson Litigation*

On May 6, 1988, an automobile driven on the New Jersey Turnpike by Robert L. Mattie ("Robert Mattie"), a Virginia resident, collided with a tractor-trailer owned by L.G. DeWitt Trucking Company ("DeWitt") and driven by Collie B. Adams ("Adams"). The DeWitt truck crossed the center divider, entered the northbound lanes and struck head-on the Mattie vehicle. Edith M. Robinson ("Robinson"), also a Virginia resident and a passenger in the Mattie vehicle along with Teresa Mattie, sustained severe bodily injuries. As of July 1992, Robinson's medical expenses exceeded $700,000.

Robert Mattie insured his automobile under a policy issued in Virginia by Progressive Casualty Insurance Company ("Progressive") which provided for only $500 in medical payments and no personal injury protection ("PIP") benefits.[1] Progressive admitted that it was also licensed by the State of New Jersey to issue automobile liability insurance policies for private passenger automobiles operated in New Jersey.

When Robinson demanded PIP benefits from Progressive, Progressive responded that, because its Virginia policy must be construed as providing the required New Jersey PIP coverage, it would not make payments in excess of $75,000 unless the UCJF agreed to reimburse it for amounts in excess of that sum. When Progressive also notified the UCJF of its intention to seek reimbursement for PIP benefits in excess of $75,000 that it paid on behalf of Robinson, the UCJF responded that because the Progressive policy was not written in New Jersey, the UCJF would not reimburse Progressive.

---

[1] At the time of the accident, there was no provision for PIP benefits under Virginia law. The only requirement of every motor vehicle owner's policy was to provide liability insurance. Va. statutes, § 46.2–472. However, upon request of the insured upon payment of the premium, coverage for medical expenses up to $2,000 per person was available. Va. statutes, § 38.2–2201A1.

Prior to the accident, New York Life Insurance Company and Wholesaler–Distributors Insurance Trust ("New York Life") issued, from the State of Illinois, a group policy providing life, medical, dental, and accidental death or dismemberment insurance to Robinson as an employee of Mattie's Graphics, a Virginia business, which policy was in effect at the time of the accident. As of July 1992, New York Life had paid medical benefits of approximately $475,000 to Robinson.

On September 5, 1989, Edith M. Robinson by her guardian D. Lewis Mattie, Teresa Mattie, Thomas Everett Robinson III by his guardian ad litem Thomas Everett Robinson, II, Ellen Mattie and D. Lewis Mattie on his own behalf, filed a complaint in the United States District Court for the District of New Jersey against DeWitt and Adams for personal injuries. In April 1990, plaintiffs amended their complaint to name the New Jersey Turnpike Authority as an additional defendant.

On October 4, 1989, Robert Mattie also filed a separate action against DeWitt, Adams and the New Jersey Turnpike Authority in the New Jersey District Court. On May 1, 1990, Progressive filed a third action in New Jersey District Court, seeking from DeWitt and Adams reimbursement for medical payments made on behalf of its insureds, Robinson, Teresa Mattie and Robert Mattie.

On May 4, 1990, Robinson's guardian filed an action, on her behalf, in the Superior Court of New Jersey for declaratory relief against Progressive, the UCJF and Samuel F. Fortunato, the New Jersey Commissioner of Insurance ("Commissioner"), seeking to compel them to pay their respective shares of Robinson's unlimited PIP benefits. On June 21, 1990, a federal judge ordered the state action removed to federal court, and later consolidated the declaratory judgment action with Progressive's action against DeWitt and Adams. On August 8, 1990, when Progressive answered Robinson's complaint, it asserted a counterclaim and cross-claims seeking declaratory relief against the UCJF and the Commissioner in the event Progressive would be required to make medical payments in excess of $75,000 on behalf of Robinson. The

federal judge consolidated the earlier Robinson lawsuit still pending with the two other cases which he had previously consolidated.

On October 30, 1990, New York Life, based upon its insurance policy insuring Robinson through her employment, filed a complaint to intervene in the consolidated federal action seeking a lien against any recovery by Robinson, reimbursement from DeWitt and Adams for medical payments made on Robinson's behalf, and reimbursement from Progressive and the UCJF for unreimbursed medical payments.

On May 16, 1991, following several motions and cross-motions, the federal judge denied without prejudice: 1) Robinson's motion for summary judgment against Progressive for PIP payments under *N.J.S.A.* 17:28–1.4; 2) Progressive's cross-motion for summary judgment against the UCJF for reimbursement of medical payments made on Robinson's behalf; and 3) New York Life's motion for summary judgment against Progressive for reimbursement or subrogation. The judge granted the UCJF's and the Commissioner's motion to abstain from deciding the matter and remanded the matter to the Superior Court.

On October 4, 1991, an Essex County judge addressed the first of the motions which had been denied without prejudice by the federal judge, concluding that under *N.J.S.A.* 17:28–1.4 Progressive was required to pay, in an unlimited amount, PIP benefits for Robinson in accordance with *N.J.S.A.* 39:6A–4, and that the UCJF was not required to reimburse Progressive under *N.J.S.A.* 39:6A–4. On April 27, 1992, following Progressive's motion for reconsideration, the judge affirmed his earlier order but deferred entry of the order pending his determination of New York Life's motion to compel Progressive to reimburse it for medical payments it had made on behalf of Robinson.

In March 1992, in its answer to New York Life's second amended complaint, Progressive filed a counterclaim asserting that New York Life was either Robinson's primary insurer or, with Progressive, a co-primary insurer. On July 2, 1992, following cross-motions for summary judgment from New York Life and

Progressive, the judge determined that Progressive was Robinson's primary insurance carrier for purposes of paying her medical expenses, and that New York Life had not waived its right to reimbursement. On July 31, 1992, the judge amended the July 2 order, and formally denied Progressive's earlier motion for reconsideration and certified that his earlier determinations were final judgments. On August 9 and 13, 1992, Progressive filed its notices of appeal in both actions.

On October 16, 1992, the trial judge denied DeWitt's and Adam's motion for summary judgment against Progressive as to its subrogation and reimbursement claims. We granted their motion for leave to appeal.

On October 8, 1992, we granted leave to Aetna Casualty & Surety Company ("Aetna") to file an amicus brief on appeal. On January 19, 1993, we granted leave to Prudential Property and Casualty Insurance Company ("Prudential") to intervene. On March 2, 1993, when Progressive posted a bond for $580,000 for monies New York Life had paid on behalf of Robinson, the July 2, 1992 order was apparently stayed. We consolidated DeWitt's and Adams's appeal with Progressive's appeal. On April 29, 1993, we granted leave to Lumbermens Mutual Casualty Company ("Lumbermens") to file an amicus brief.

B. *The Charles Martin Litigation*

On July 26, 1987, Home Insurance Company ("Home") issued an insurance policy to Antonio Celeste, a Pennsylvania resident, which policy provided $10,000 in medical expense coverage. Home was authorized to issue automobile insurance policies in New Jersey.

On September 28, 1987, the Home-insured vehicle, driven by Diana Celeste, hit Charles Martin while Martin was operating his bicycle. As of December 1989, Martin's medical expenses exceeded $100,000. In response to Home's demand, the UCJF refused to reimburse Home for any medical expense benefits it might pay on behalf of Martin in excess of $75,000.

On January 30, 1989, Martin filed a complaint against Home seeking a declaratory judgment that Home had to provide him with PIP benefits for his injuries. Home was permitted to file a third-party complaint against the UCJF seeking a declaration that the UCJF was liable to reimburse Home for medical payments made on behalf of Martin in excess of $75,000 under the New Jersey Automobile Reparation Reform Act, *N.J.S.A.* 39:6A–1 to –35.

Home moved for summary judgment, and on September 11, 1992 the Burlington County judge granted summary judgment in favor of Home against the UCJF for reimbursement. The judge did not reach the issue of the constitutionality of *N.J.S.A.* 39:6–73.1 ("Assumption of excess payment by [the UCJF]; exceptions").

The UCJF has appealed from this summary judgment.

On May 18, 1993, we consolidated the *Robinson* and *Martin* appeals.

## I.

### *Applicable Insurance Statutes and Their Legislative History*

In 1972, the Legislature enacted *N.J.S.A.* 39:6A–1 to –35, which in part provided PIP coverage regardless of fault. *L.* 1972 *c.* 70 § 4 (*N.J.S.A.* 39:6A–4). In setting forth the extent of coverage under the Act, the applicable subsection [2] defined medical expense benefits as follows:

---

[2] Although not applicable to these cases, the Legislature rewrote the definition, effective March 12, 1990:

a. Medical expense benefits. Payment of reasonable medical expenses in an amount not to exceed $250,000 per person per accident. In the event benefits paid by an insurer pursuant to this subsection are in excess of $75,000 on account of personal injury to any one person in any one accident, such excess shall be paid by the insurer in consultation with the Unsatisfied Claim and Judgment Fund Board and shall be reimbursable to

> a. Medical expense benefits. Payment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident....
>
> [*L.* 1972, *c.* 70, § 4a.]

In 1977 the Legislature amended subsection a of *N.J.S.A.* 39:6A–4 to read:

> Payment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident. In the event of death, payments shall be made to the estate of the decedent. In the event benefits paid by an insurer pursuant to this subsection are in excess of $75,000.00 on account of personal injury to any one person in any one accident, such excess shall be paid by the insurer in consultation with the Unsatisfied Claim and Judgment Fund Board and shall be reimbursable to the insurer from the Unsatisfied Claim and Judgment Fund pursuant to section 2 of P.L.1977, c. 310 (C. 39:6–73.1).
>
> [*L.* 1977, *c.* 310, § 1, (effective January 5, 1978).]

In the Senate Committee statement accompanying the 1977 amendment, the Legislature stated that under the amendment "an insurance company's liability on any one medical expense claim [would] not exceed $75,000," and that the "remainder of the payment would be made from the ... [UCJF], to which insurers contribute in proportion to their percentage of the market." *See Senate Committee Statement* No. 1380, *L.* 1977, *c.* 310, reproduced in relevant part following *N.J.S.A.* 39:6A–4. The committee statement also provided that the amendment had a "two-fold purpose." *Ibid.* First, it alleviates the burden of larger claims on smaller companies, many of which have limited resources. *Ibid.* Second, the amendment positively affected rate-making by making it unnecessary for companies to set aside huge reserves for potentially large claims, which change would particularly help smaller companies who "reinsure certain of these risks at a high premium [with an adverse] ... impact upon the rates that they charge." *Ibid.*

In 1988 our Supreme Court stated that in creating PIP benefits under New Jersey's "No–Fault" law the Legislature recognized "that most automobile accidents involve private passenger cars, and that most households will own a car." *Sotomayor v. Vasquez,*

---

the insurer from the Unsatisfied Claim and Judgment Fund pursuant to section 2 of P.L.1977, c. 310 (C. 39:6–73.1).

[*N.J.S.A.* 39:6A–4a.]

109 *N.J.* 258, 261, 536 *A.*2d 746 (1988). It noted that "compulsory automobile insurance providing basic PIP benefits for the occupants of each car and the members of each car owner's family is designed to provide quick and easy reimbursement for the basic personal costs most people incur when they are involved in an automobile accident." *Ibid.*

*N.J.S.A.* 39:6–73.1, referred to in the amendment to *N.J.S.A.* 39:6A–4, provides as follows:

> In the event medical expense benefits paid by an insurer, in accordance with subsection a. of section 4 of P.L.1972, c. 70 (C. 39:6A–4), are in excess of $75,000.00 on account of personal injury to any one person in any one accident, the ... [UCJF] shall assume such excess up to $250,000 and reimburse the insurer therefor in accordance with rules and regulations promulgated by the commissioner; provided, however, that this provision is not intended to broaden the coverage available to accidents involving uninsured or hit-and-run automobiles, to provide extraterritorial coverage, or to pay excess medical expenses.

Under New Jersey law, out-of-state insurers licensed to do business in New Jersey must comply with the PIP coverage minimum of *N.J.S.A.* 39:6A–4 for those automobiles they insure which are used or operated in New Jersey:

> Any insurer authorized to transact or transacting automobile or motor vehicle business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting insurance business in this State, which sells a policy providing automobile or motor vehicle liability insurance coverage or any similar coverage, in any other state or in any province of Canada, shall include in each policy coverage to satisfy at least ... personal injury protection benefits coverage pursuant to ... [*N.J.S.A.* 39:6A–4] ..., whenever the automobile or motor vehicle insured under the policy is used or operated in this State.

> Any liability insurance policy subject to this section shall be construed as providing the coverage required herein....
>
> [<em>N.J.S.A.</em> 17:28–1.4.]

Under the Unsatisfied Claim and Judgment Fund Act (*N.J.S.A.* 39:6–61 to –91), an "insurer" is "any insurer authorized in ... [New Jersey] to write the kinds of insurance specified in [*N.J.S.A.* 17:17–1d and 1e (e.g., bodily injury, death or property loss due to accident) ]." *N.J.S.A.* 39:6–62. The UCJF is funded by insurance companies pursuant to *N.J.S.A.* 39:6–63(d) based upon "the proportion that the net direct written premiums of each [insurer] bear

to the aggregate net direct written premiums of all insurers" during the year.

*N.J.S.A.* 39:6A–9.1 sets forth the rules governing recovery or reimbursement of PIP benefits from a tortfeasor or her insurer:

> An insurer, health maintenance organization or governmental agency paying ... personal injury protection benefits in accordance with [*N.J.S.A.* 39:6A–4] ..., as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection or medical expense benefits coverage, other than for pedestrians, under the laws of this State, including personal injury protection coverage required to be provided in accordance with ... [*N.J.S.A.* 17:28–1.4], or although required did not maintain personal injury protection or medical expense benefits coverage at the time of the accident. In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer, health maintenance organization or governmental agency is legally entitled to recover the amount of payments and the amount of recovery, including the costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration.

## II.

### Out-of-State Insurers' Claims for Reimbursement Against UCJF

■ Progressive, Prudential, Home and Lumbermens all claim that the express language of the applicable statutes mandates that the UCJF reimburse an out-of-state insurer authorized to transact business in New Jersey for PIP benefits paid to an injured party as the result of a New Jersey automobile accident. They also argue that this interpretation is consistent with the statutes' legislative history, and that reading the statutes so as not to provide reimbursement would be unconstitutional. In addition, Progressive argues that the UCJF's interpretation of the statutes amounts to unlawful rulemaking and should be rejected on that ground alone.

Before setting forth his decision in *Robinson,* the Essex County judge reviewed the history of the legislative scheme governing UCJF reimbursement of PIP benefits and then concluded that the

UCJF correctly asserted that the reimbursement provisions of *N.J.S.A.* 39:6–73.1 do not apply to out-of-state policies, but only to policies written to cover New Jersey-registered vehicles as required by *N.J.S.A.* 39:6A–4.

In *Martin*, the Burlington County judge decided the same issue, involving different parties, the opposite way. Although the judge noted that *N.J.S.A.* 17:28–1.4 does not expressly provide for UCJF reimbursement to out-of-state insurers, she pointed out that the statute does refer to *N.J.S.A.* 39:6A–4. That is significant, she concluded, because of the requirement in *N.J.S.A.* 39:6A–4 that "every automobile liability insurance policy" provide, among other things, the PIP coverage for which the out-of-state insurer sought reimbursement from the UCJF, and because "insurer" is defined under *N.J.S.A.* 39:6–62 as "any insurer authorized" to write insurance in New Jersey, which definition would also cover an out-of-state insurer.[3] The judge concluded that a finding that Home was not entitled to UCJF reimbursement "flies in the face of the plain language of these statutes read together."

Following her decision and pending appeal, we ordered a remand for a determination of the constitutionality of *N.J.S.A.* 39:6–73.1 inasmuch as Home maintained that if the statute did not mandate reimbursement, it was unconstitutional. On remand, another Burlington County judge found that *N.J.S.A.* 39:6–73.1 was not unconstitutional on equal protection grounds because of the failure to address every potential possibility. He held the statute constitutional because "the means chosen—the format, the classification in this particular case is reasonably or rationally related toward the goal, the purpose, the interest."

Generally, a court should construe a statute as written and "not according to some unexpressed intention." *Dacunzo v. Edgye*, 19 *N.J.* 443, 451, 117 *A.*2d 508 (1955). The nature of the subject

---

[3] Although the transcript cites *"N.J.S.A.* 39:6–6.2," that is a mistake; there is no *N.J.S.A.* 39:6–6.2. However, *N.J.S.A.* 39:6–62 does define "insurer" as referred to by the judge.

matter and the contextual setting must also be considered in seeking legislative intent. *State v. Wright,* 107 *N.J.* 488, 502, 527 *A.*2d 379 (1987). Usually statutes dealing with the same subject matter and seeking "to achieve the same overall legislative purpose should be read *in pari materia,* particularly where an ambiguity exists." *Kennedy v. Allstate Ins. Co.,* 211 *N.J.Super.* 515, 519, 511 *A.*2d 1301 (Law Div.), *aff'd,* 213 *N.J.Super.* 137, 516 *A.*2d 1117 (App.Div.1986), *certif. granted,* 107 *N.J.* 71, 526 *A.*2d 153, *certif. vacated,* 107 *N.J.* 624, 527 *A.*2d 450 (1987).

The insurance companies claim, as the judge found in *Martin,* that the applicable statutes should be read so as to afford them, as out-of-state insurers writing policies on automobiles operated in New Jersey, reimbursement from the UCJF for PIP benefits they pay under *N.J.S.A.* 39:6A–4.

*N.J.S.A.* 39:6–73.1 expressly grants a right of reimbursement for PIP benefits "paid by an insurer" in accordance with *N.J.S.A.* 39:6A–4a. *N.J.S.A.* 39:6–62 defines "insurer" as "any insurer authorized in this State to write the kinds of insurance specified in paragraphs d. and e. of [*N.J.S.A.*] 17:17–1." The term "insurer" is not separately defined in *N.J.S.A.* 39:6A–2, and *N.J.S.A.* 39:6A–4a authorizes reimbursement for PIP benefits "paid by the insurer" from the UCJF "pursuant to ... [*N.J.S.A.* 39:6–73.1]." Because *N.J.S.A.* 39:6–73.1, *N.J.S.A.* 39:6A–4a and *N.J.S.A.* 39:6–62, when read together, expressly authorize the reimbursement at issue, we need not resort to statutory interpretation or legislative history. *Alling Street Urban Renewal Co. v. City of Newark,* 204 *N.J.Super.* 185, 189, 497 *A.*2d 1287 (App.Div.1985), *certif. denied,* 103 *N.J.* 472, 511 *A.*2d 653 (1986).

Even though there is no right of reimbursement mentioned in *N.J.S.A.* 17:28–1.4, which is the statute that creates the duty of out-of-state insurers to comply with New Jersey's PIP benefits coverage under *N.J.S.A.* 39:6A–4 where the insureds' cars are operated in New Jersey, the right of reimbursement is contained in *N.J.S.A.* 39:6A–4a, *N.J.S.A.* 39:6–62 and *N.J.S.A.* 39:6–73.1.

The UCJF argues that *N.J.S.A.* 39:6.73.1 and *N.J.S.A.* 39:6A–4 "reflect[ ] New Jersey's insurance system" and do not apply to policies written out of state because the statute dealing with out-of-state insurers, *N.J.S.A.* 17:28–1.4, does not authorize the reimbursement which the insurance companies seek.

The UCJF's arguments are flawed for two reasons. First, *N.J.S.A.* 17:28–1.4 (part of chapter 28, Title 17, "Policy Form and Provisions") should be read in *pari materia* with *N.J.S.A.* 39:6–73.1 (part of chapter 6, Title 39, "Financial Responsibility") and *N.J.S.A.* 39:6A–4a (part of chapter 6A, Title 39, "Compulsory Automobile Liability Insurance—No Fault Provisions") because they all "deal with the same subject matter," *i.e.*, provision of automobile liability insurance and allocation of coverage costs, and because they all "seek to achieve the same overall legislative purpose," *i.e.*, automobile no-fault insurance reform. *Kennedy, supra,* 211 *N.J.Super.* at 519, 511 *A.*2d 1301. That these statutes are interrelated and are all part of the same statutory scheme is further shown by the fact that, in 1988, the Legislature amended *N.J.S.A.* 17:28–1.4 and *N.J.S.A.* 39:6A–4 by the same enactment. *L.* 1988, *c.* 199, §§ 1, 3.

Second, *N.J.S.A.* 17:28–1.4, which the UCJF claims has nothing to do with authorizing the reimbursement set forth in *N.J.S.A.* 39:6–73.1 and *N.J.S.A.* 39:6A–4, does not separately define "insurer." Thus, the definition in *N.J.S.A.* 39:6–62 becomes relevant.

The UCJF also argues that the reimbursement rights that the insurers claim cannot be justified as part of a comprehensive system of funding New Jersey's insurance system because the UCJF is funded by assessing insurance companies' policies written in New Jersey, and the subject policies were written out-of-state. Because of the plain terms of the statute, we need not reach this issue. However, we note that the statutory scheme which provides funding for the UCJF is not set up so that the benefits flowing to insurers for reimbursement from the UCJF match or balance the assessments levied on those insurers who pay for the fund. In fact, Progressive says, and the UCJF does

not contest, that between 1987 and 1989 it contributed over one million dollars to the UCJF for its commercial lines, and yet received no benefit from the Fund.

Nevertheless, the UCJF assails Progressive's argument that the Legislature has, by choosing the funding scheme the Legislature did, made it irrelevant whether the out-of-state insurers seeking reimbursement contribute to the UCJF. The UCJF says that if the insurance companies' argument prevails, then New Jersey drivers "are subsidizing the insurance cost for residents of other states." To some extent, of course, and in particular cases, this is true. However, the number of cases where this would apply, *i.e.*, where an out-of-state insurer who does not contribute to the UCJF by virtue of writing commercial lines in New Jersey and who seeks reimbursement for PIP benefits paid in excess of $75,000 under an automobile insurance policy, is most likely minimal. Moreover, New Jersey residents benefit from the overall insurance scheme inasmuch as under *N.J.S.A.* 17:28–1.4 out-of-state companies insuring drivers who injure persons in New Jersey must provide such drivers with the same extent of liability coverage as New Jersey-insured drivers themselves receive. We assume that the Legislature considered this situation.

The UCJF next argues that, in 1988, when the Legislature adopted *N.J.S.A.* 17:28–1.4, the "conformity" statute, it could have amended *N.J.S.A.* 39:6–73.1 to expressly provide the reimbursement the insurers seek here; however, the fact that the Legislature did not amend that statute does not mean that it intended not to afford out-of-state insurers such reimbursement rights. Therefore, we do not have to address whether the UCJF's interpretation of *N.J.S.A.* 39:6–73.1 is "rulemaking" and unconstitutional on equal protection and due process grounds.

However, the general no-fault statutory scheme certainly implies that the UCJF should reimburse "insurers," whether they be in-state or out-of-state, for PIP benefits paid. *N.J.S.A.* 39:6A–4; *N.J.S.A.* 39:6–73.1; *N.J.S.A.* 39:6A–2. "A statute often speaks as

plainly by inference as by express words." *Lomarch Corp. v. Mayor of Englewood,* 51 *N.J.* 108, 113, 237 *A.*2d 881 (1968).

With respect to the UCJF's reimbursement of PIP benefits to these out-of-state insurers, we affirm the decision in *Martin* and reverse the decision in *Robinson.*

### III.

### *New York Life's Claim For Reimbursement Against Progressive (Robinson only)*

■ Progressive also challenges the determination that it, as "primary insurer," must reimburse New York Life for payments that New York Life made for Robinson's medical expenses.

The issue of reimbursement between Progressive, the insurer for the driver of Robinson's vehicle, and New York Life, the health insurance provider under Robinson's employment insurance policy, was the subject of cross-motions for summary judgment based upon the primacy of coverage for Robinson's medical expenses. New York Life relied on two provisions in its own policy:

RIGHT OF RECOVERY

If New York Life pays for Allowable Expenses more than is required by these provisions, New York Life has the right to recover the excess amounts from one or more of the following, as New York Life shall determine in its sole discretion: any persons to, or for, or with respect to, whom such payments were made, any other insurance companies, and other organizations.

IS A THIRD PARTY LIABLE FOR COVERED EXPENSES?

We will pay benefits for covered expenses incurred due to the injury, sickness or mental disorder of a family member when timely claim is made; when we do so:

1.  We shall be entitled, to the extent of such payment, to all of the family member's rights of recovery against any third party because of such injury, sickness, or disorder. . . .

The Progressive policy covering the Robinson vehicle provided in part:

OUT–OF–STATE INSURANCE ENDORSEMENT

It is agreed that, subject to all provisions of the policy except where modified herein, the following provision is added:

If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province,

a non-resident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the Company's liability and the kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy....

The Essex County judge concluded that Progressive was the primary insurer for Robinson based on the above-quoted terms of the Progressive policy. He next determined that because New York Life, the secondary insurer, had paid PIP benefits on behalf of Robinson in the approximate amount of $475,000, contribution law in New Jersey required that Progressive reimburse New York Life for Progressive's share, actually one hundred percent, of the PIP benefits paid. The judge also found it significant that the New York Life policy specifically preserved a contribution right. He also found that there was no basis for Progressive's claim that New York Life had waived any contribution or indemnity right it may have otherwise had.

Progressive argues that there is no New Jersey statutory right of subrogation, and any "common law/equitable subrogation" to which New York Life may arguably claim entitlement is defeated by the Virginia law prohibiting insurance policy subrogation clauses.

We will not address on its merits Progressive's claim that the trial judge neglected to decide the question of Virginia law that expressly prohibits insurers from issuing policies that subrogate themselves to recover from a third person for personal injuries, quoting *Va.Code Ann.* § 38.2–3405 ("Certain subrogation provisions and limitations upon recovery in hospital, medical, etc. policies forbidden"). First, Progressive has not properly documented its claim that this matter was raised in the trial court. In fact, Progressive's notice of motion and brief do not address the Virginia law issue nor does Progressive point to any part of the

transcript of the proceedings where it allegedly brought up the issue directly.

We note, however, that although the Virginia law (*i.e.*, § 38.2–3405) generally prohibits insurance subrogation clauses in the personal injury context, it also recognizes an exception which arguably applies to this reimbursement issue: "... nor shall this provision prohibit coordination of benefits provisions when there are two or more such contracts or plans providing for payment of the same benefits." New York Life's reimbursement clause could be reasonably construed as a "coordination of benefits" provision in a case where two insurance contracts provide for payment of the same benefits.

■ Progressive concedes, at least for this appeal, that its policy was "primary" for purposes of paying Robinson's medical expenses. In any event, under New Jersey law, unless one exercises an option to make one's health insurer the primary insurer for purposes of injuries sustained in an automobile accident under *N.J.S.A.* 39:6A–4.3d, PIP coverage is otherwise primary. *N.J.S.A.* 39:6A–4.2; *Curts v. Atlantic Mutual Ins. Co.*, 246 *N.J.Super.* 385, 392, 587 *A.*2d 1283 (App.Div.1991). And the choice of coverage created by *N.J.S.A.* 39:6A–4.3d did not even become effective until January 1, 1991, so that Robinson, who was hurt in 1988, must rely upon the PIP carrier, *i.e.*, Progressive, as primary insurer. Until the policy limits are exhausted, the duty to pay rests on the primary insurer.

Finally, Progressive argues that requiring it to reimburse New York Life for PIP benefits paid would be, under the circumstances, inequitable. This claim is clearly without merit. *R.* 2:11–3(e)(1)(E).

Thus, it was Progressive's duty to pay Robinson's medical expenses, and New York Life is entitled to reimbursement from Progressive for benefits paid.

## IV.

### *Progressive's Claim For Reimbursement Against Tortfeasors*

■ DeWitt and Adams ("DeWitt") argue that the judge erred in refusing to grant them summary judgment against Progressive as to Progressive's claim to be reimbursed from DeWitt for medical expenses paid on behalf of Robinson. The Essex County judge determined that merely because Robinson, as plaintiff, could not receive a double recovery under New Jersey law was an insufficient reason to deny reimbursement to Progressive.

*N.J.S.A.* 39:6A–9.1 allows reimbursement to a PIP payor from two classes of persons: first, from "any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection or medical expense benefits coverage ... under the laws of this State ... or although required did not maintain personal injury protection or medical expense benefits coverage...."; second, from "the insurer of the tortfeasor" in the case of "an accident occurring in this State involving an insured tortfeasor." However, DeWitt clearly is not a member of either class. Thus, *N.J.S.A.* 39:6A–9.1 does not provide a right of reimbursement by Progressive from DeWitt.

The fallacy with Progressive's argument that perhaps the Legislature by enacting *N.J.S.A.* 39:6A–9.1 did not intend to exclude the right of reimbursement against the tortfeasor, such as DeWitt, is that, subject to any applicable statutes, an insurer seeking subrogation has only those rights which the insured had. *Aetna Ins. Co. v. Gilchrist Bros. Inc.*, 85 *N.J.* 550, 560–61, 428 *A.*2d 1254 (1981).

Progressive next contends that it has a common law right of subrogation. It argues that if its payments to Robinson were outside of the No–Fault Law, as the motion judge found, then the prohibition against subrogation found in *N.J.S.A.* 39:6A–9.1, which might otherwise apply to it, would no longer be of any effect. However, Progressive's rights and responsibilities must be ana-

lyzed under the No–Fault statutes, under which Progressive has no reimbursement rights against DeWitt, the tortfeasor.

Therefore, it is not necessary to address Progressive's final contention that reimbursement from DeWitt is authorized by the collateral source statute (*i.e.*, *N.J.S.A.* 2A:15–97).

### Conclusion

We affirm the decision in *Martin* and reverse the decision in *Robinson* on the issue of UCJF reimbursement; we affirm the decision in *Robinson* on the issue of Progressive's reimbursement of New York Life; and we reverse the decision in *Robinson* on Progressive's claim for reimbursement from DeWitt and Adams.