661 A.2d 808

CHARLES MARTIN, PLAINTIFF, v. HOME INSURANCE COMPA-
NY, DEFENDANT AND THIRD-PARTY PLAINTIFF-RESPON-
DENT, v. UNSATISFIED CLAIM AND JUDGMENT FUND,
THIRD-PARTY DEFENDANT-APPELLANT.

EDITH M. ROBINSON, BY HER GUARDIAN, D. LEWIS MATTIE,
TERESA L. MATTIE, THOMAS EVERETT ROBINSON, III, BY
HIS GUARDIAN AD LITEM, THOMAS EVERETT ROBINSON,
II, D. LEWIS MATTIE, ELLEN MATTIE, AND ROBERT L.
MATTIE, PLAINTIFFS, AND PROGRESSIVE CASUALTY IN-
SURANCE COMPANY, PLAINTIFF-RESPONDENT, v. L.G. DE-
WITT TRUCKING COMPANY, INC., COLLIE B. ADAMS AND
THE NEW JERSEY TURNPIKE AUTHORITY, DEFENDANTS.

EDITH M. ROBINSON, BY HER GUARDIAN D. LEWIS MATTIE,
PLAINTIFFS, v. PROGRESSIVE CASUALTY INSURANCE
COMPANY, DEFENDANT-RESPONDENT, AND UNSATISFIED
CLAIM AND JUDGMENT FUND AND SAMUEL F. FORTUNA-
TO, COMMISSIONER OF INSURANCE, DEFENDANTS-APPEL-
LANTS, AND PRUDENTIAL PROPERTY AND CASUALTY
COMPANY, INTERVENOR-RESPONDENT.

NEW YORK LIFE INSURANCE COMPANY AND WHOLESALER-
DISTRIBUTORS INSURANCE TRUST, PLAINTIFFS, v. PRO-
GRESSIVE CASUALTY INSURANCE COMPANY, DEFEN-
DANT-RESPONDENT, AND L.G. DEWITT TRUCKING COMPA-
NY, COLLIE B. ADAMS, AND EDITH M. ROBINSON, DEFEN-
DANTS, AND THE UNSATISFIED CLAIM AND JUDGMENT
FUND AND SAMUEL F. FORTUNATO, COMMISSIONER OF
INSURANCE, DEFENDANTS-APPELLANTS.

Argued March 14, 1995—Decided July 31, 1995.

*Karen L. Jordan,* Deputy Attorney General, argued the cause for appellants (*James J. Ciancia,* Acting Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel).

*Elliott Abrutyn* argued the cause for respondent Home Insurance Company (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys; *Sandra Lawrence Paz,* on the brief).

*Kevin R. Gardner* argued the cause for respondent Progressive Casualty Insurance Company (*Connell, Foley & Geiser,* attorneys; *Mr. Gardner* and *George J. Kenny,* of counsel).

*Ross A. Lewin* argued the cause for respondent Prudential Property and Casualty Insurance Company (*Jamieson, Moore, Peskin & Spicer,* attorneys; *Thomas P. Weidner,* of counsel).

The opinion of the Court was delivered by

O'HERN, J.

In 1972, the Legislature enacted a no-fault automobile insurance scheme. *L.* 1972, *c.* 70. The New Jersey Automobile Reparation Reform Act (No–Fault Law), *N.J.S.A.* 39:6A–1 to –35, requires that every private-passenger automobile registered in New Jersey be insured under a policy containing personal-injury-protection (PIP) benefits. PIP benefits are designed to cover certain basic expenses incurred in automobile accidents by the occupants of an insured vehicle, the members of each car owner's family, and, in certain instances, pedestrians. At first, medical-expense benefits under PIP were unlimited, posing enormous open-ended liability for insurance companies. In 1977, the Legislature revised the PIP laws, limiting the responsibility of any PIP carrier for medical expenses to the first $75,000, and shifting the burden for any remaining expenses to the Unsatisfied Claim and Judgment Fund (UCJF).[1] *N.J.S.A.* 39:6A–4a. Under that law the UCJF was to "reimburse" carriers for such PIP benefits in excess of $75,000. *N.J.S.A.* 39:6–73.1.

Many accidents on New Jersey highways involve out-of-state vehicles not required by the laws of their states to maintain the liability insurance of New Jersey vehicles. The Legislature realized that litigation might remain the norm in such cases if it did

---

[1] A 1990 amendment to *N.J.S.A.* 39:6A–4a capped PIP benefits at $250,000. Presumably, the cost of automobile and accident reparations in excess of that sum will be paid through general health insurance, private insurers, or public-assistance health programs. Because of the dates of the accidents in these cases, that amendment is not applicable.

not address that problem. To achieve the purposes of the No–Fault Law (swift reparations and reduction of court congestion), the Legislature in 1985 required that any policy issued by an insurance company qualified to do business in New Jersey covering a vehicle while it is being operated in New Jersey be construed as providing the same type of PIP benefits as are required under New Jersey law. *N.J.S.A.* 17:28–1.4. Therefore, as a condition of doing business in New Jersey, an insurance company must, in accordance with New Jersey law, provide PIP coverage for the out-of-state vehicle. Thus, the occupants of an out-of-state car traveling in New Jersey have the same financial protections as occupants of in-state cars traveling the same roadways. The question in this case is whether the UCJF must reimburse insurers of out-of-state vehicles for PIP medical benefits in excess of the $75,000 paid under New Jersey's conformity statute, *N.J.S.A.* 17:28–1.4.

I

For purposes of this appeal, we rely generally on briefs of Progressive Casualty Insurance Company (Progressive) for the procedural history and facts of *Robinson*, and on briefs of Home Insurance Company (Home) for the procedural history and facts of *Martin*.

At the time of the automobile accident, plaintiff Edith Robinson was a resident of Virginia. She was injured in New Jersey while a passenger in an automobile insured under a Virginia automobile insurance policy issued by Progressive. The accident occurred on May 6, 1988, when an automobile driven by Robert Mattie, collided with a tractor trailer owned by L.G. DeWitt Trucking Company (DeWitt) and driven by one of its employees, Collie Adams. Robinson's injuries from the accident were severe, and by July 1992, her expenses exceeded $700,000. She sued Progressive, claiming entitlement to New Jersey PIP benefits, including

the payment of her reasonable medical expenses.[2] Progressive claimed that the UCJF was required to participate in the payment of Robinson's medical expenses.

The Law Division ruled that the UCJF was not responsible for providing reimbursement to Progressive for any excess PIP benefits paid to Robinson. In a related ruling, the Law Division denied DeWitt's motion to dismiss Progressive's subrogation claims against it and its employee to recover any PIP medical benefits that Progressive was required to pay Robinson.

Charles Martin is a resident of New Jersey. On September 28, 1987, while riding his bicycle, he was struck by an out-of-state vehicle driven by Diana Celeste and insured by Home. Martin was seriously injured, and by December 1989, he had incurred medical expenses in excess of $100,000. The auto was insured under a policy issued to Antonio Celeste, a Pennsylvania resident. Home is authorized to issue automobile liability insurance in New Jersey. Martin sued Home to compel payment of New Jersey PIP benefits. Home then joined the UCJF, asserting a right to reimbursement of excess medical expense benefits. The Law Division held that "it appears * * * that [Home] * * * is entitled to the reimbursement provisions of the fund."

The two appeals were consolidated in the Appellate Division. That court affirmed the decision in *Martin* and reversed the decision in *Robinson.* 276 *N.J.Super.* 378, 648 *A.*2d 213 (1994). The court concluded that when read together, *N.J.S.A.* 39:6–73.1, *N.J.S.A.* 39:6–62, and *N.J.S.A.* 39:6A–4a authorized the reimbursement sought by the insurers in both cases. 276 *N.J.Super.* at 391,

---

[2] New York Life Insurance Company and Wholesaler–Distributors Insurance Trust (collectively New York Life) provided Robinson with medical, dental, and accidental death or dismemberment insurance through a group policy issued from the State of Illinois to Robinson's Virginia employer. Those companies paid medical benefits in excess of $400,000 to Robinson. Progressive, however, had a duty to pay Robinson's medical expenses as the "primary insurer," and New York Life was entitled to reimbursement from Progressive for benefits paid. 276 *N.J.Super.* 378, 396, 648 *A.*2d 213 (App.Div.1994).

648 *A.*2d 213. *N.J.S.A.* 39:6–73.1 grants a right of reimbursement to any insurer paying PIP benefits in accordance with *N.J.S.A.* 39:6A–4a. (Medical expense benefits are a form of PIP benefits.) *N.J.S.A.* 39:6–62 defines an insurer as "any insurer authorized in this State to write the kinds of insurance specified in [*N.J.S.A.*] 17:17–1."

The Appellate Division concluded that the conformity statute, *N.J.S.A.* 17:28–1.4, should be construed with *N.J.S.A.* 39:6A–4a (the PIP Act) and *N.J.S.A.* 39:6–73.1 (the reimbursement provision) because all of the statutes deal with the same subject matter and seek to achieve the same legislative purpose. That is, they all deal with the "provision of automobile liability insurance and allocation of coverage costs," and they all seek to achieve "automobile no-fault insurance reform." 276 *N.J.Super.* at 392, 648 *A.*2d 213. Additionally, the court concluded that the definition of an "insurer" in *N.J.S.A.* 39:6–62 was relevant because the conformity statute did not separately define an insurer. *Ibid.* The court, therefore, concluded that reimbursement was authorized.

We granted UCJF's petition for certification. 139 *N.J.* 184 (1994).

## II

The conformity statute, *N.J.S.A.* 17:28–1.4, provides:

> Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State * * * which sells a policy providing automobile or motor vehicle liability insurance coverage * * * in any other state or in any province of Canada, shall include in each policy coverage to satisfy * * * personal injury protection [PIP] benefits coverage pursuant to [*N.J.S.A.* 39:6A–4] * * * whenever the automobile or motor vehicle insured under the policy is used or operated in this State.

Among the PIP benefits required to be provided under *N.J.S.A.* 39:6A–4 are medical expense benefits. *N.J.S.A.* 39:6A–4a. The reimbursement provision, *N.J.S.A.* 39:6–73.1, provides:

> In the event medical expense benefits paid by an insurer, in accordance with subsection a. [of *N.J.S.A.* 39:6A–4], are in excess of $75,000.00 on account of personal injury to any one person in any one accident, the Unsatisfied Claim and Judgment Fund shall assume such excess up to $250,000 and reimburse the insurer

therefor in accordance with rules and regulations promulgated by the commissioner * * *.

See *N.J.A.C.* 11:3–28.7 (outlining reimbursement procedures).

Each party relies on the language of the statutes. The UCJF claims that because reimbursement is called for only on policies written "in accordance with [*N.J.S.A.* 39:6A–4a]," *i.e.,* policies *required* to be placed on New Jersey cars, it is not responsible to provide reimbursement for medical benefits paid on out-of-state policies in accordance with the conformity statute, *N.J.S.A.* 17:28–1.4. Progressive and Home insist that their policies are written pursuant to *N.J.S.A.* 39:6A–4 because they must provide the benefits set forth in that statute as required by *N.J.S.A.* 17:28–1.4. Therefore, they argue that because *N.J.S.A.* 39:6–73.1 provides for reimbursement of excess medical expenses paid pursuant to *N.J.S.A.* 39:6A–4, the UCJF must reimburse medical expenses paid under an out-of-state policy. *See Adams v. Keystone Ins. Co.,* 264 *N.J.Super.* 367, 372, 624 *A.2d* 1008 (App.Div.1993) (noting that "the UCJF * * * pursuant to *N.J.S.A.* 39:6A–4a * * * may be required to reimburse an [out-of-state] insurer for PIP benefits in excess of $75,000").

As the U.S. Supreme Court has observed in another context, "[e]ach [party's interpretation] is plausible, but no more persuasive than that. The language relied upon by petitioners * * * is ambiguous and does not speak directly to the question presented here. The intent of [the Legislature] * * * must be deduced * * *." *Equal Employment Opportunity Comm'n v. Arabian Am. Oil Co.,* 499 *U.S.* 244, 250–51, 111 *S.Ct.* 1227, 1231–32, 113 *L.Ed.2d* 274, 283 (1991). So, too, here the language of the statutes does not, in our view, plainly resolve the issues. "In the absence of specific guidance, our task is to discern the intent of the Legislature not only from the terms of the Act, but also from its structure, history and purpose." *Fiore v. Consolidated Freightways,* 140 *N.J.* 452, 471, 659 *A.2d* 436 (1995) (citing *Roig v. Kelsey,* 135 *N.J.* 500, 515, 641 *A.2d* 248 (1994)).

The policy argument against reimbursement is that reimbursement of the out-of-state carriers does not advance any of the purposes of the provisions limiting an insurer's liability, the goals of which are to improve New Jersey's rate-making structure. That is, the elimination of an insurer's need to maintain large reserves in anticipation of potentially large medical-expense claims curtails the distortion of rates caused by such reserves. Thus, the risks for the private-passenger automobile-insurance market in New Jersey are stabilized, and, instead, insurers in that market maintain adequate reserves for their market participation through contribution to the UCJF. The UCJF is funded primarily by contributions assessed against insurers on the basis of insurance policies written on vehicles *garaged* in New Jersey. (We are informed that more than 90% of those funds are allocated for reimbursement.) If insurers of out-of-state automobiles involved in accidents in New Jersey receive a reimbursement, they will receive what the UCJF regards as a "windfall," funded by New Jersey insurers, and indirectly funded by New Jersey motorists, who will have to pay higher rates as a result of increased contributions to the UCJF by their carriers.

The insurance companies argue that there is no windfall here. Each insurer has paid substantial sums into the UCJF on account of the premiums written on their New Jersey-based policies. (We are informed that Progressive has paid $3,000,000 into the UCJF, and Home has paid $1,000,000.) Pending out-of-state claims are estimated to be valued at $11,000,000. In addition, the insurance companies argue that in-state drivers and rate payers will indirectly benefit from the reimbursement if the system is treated as a symmetrical whole, because the out-of-state claimants will bear the burden of the verbal threshold and their insurance companies may not seek subrogation for PIP benefits against the insurance companies of in-state drivers. Thus, the countervailing policy argument made by the insurance companies is that if PIP benefits paid under an out-of-state insurance policy are not treated exactly as those paid under a New Jersey policy, then many problems will arise in the resolution of automobile-accident cases.

For example, it was argued below that if insurers are thought not to make payments in such cases "under 39:6A–4," then the evidential exclusion rule, *N.J.S.A.* 39:6A–12, might not apply. That statute limits subrogation rights and prohibits the admission into evidence of amounts paid pursuant to *N.J.S.A.* 39:6A–4 "in a civil action for recovery of damages for bodily injury by [the] injured person."' *See UCJF v. New Jersey Mfrs. Ins. Co.*, 138 *N.J.* 185, 201, 649 *A.*2d 1243 (1994) ("creation of any subrogation right would be inconsistent with [*N.J.S.A.* 39:6A–12]"). Similarly, the exemptions from tort liability for non-economic loss (pain and suffering) established in *N.J.S.A.* 39:6A–8, the verbal threshold provisions, might not apply in such cases because those provisions come into play only when *N.J.S.A.* 39:6A–4 is in effect. In those scenarios there would be a flood of litigation in our courts whenever an out-of-state vehicle is involved in an automobile accident within our borders.

With respect to concerns about the application of *N.J.S.A.* 39:6A–12 (prohibiting recovery of PIP expenses in tort actions), it suffices to say that "[i]f there is one definite principle that emerges from our PIP law, policy, and precedent, it is that there shall be no double recovery of PIP benefits." *Wilson v. UCJF*, 109 *N.J.* 271, 281, 536 *A.*2d 752 (1988); *accord N.J.S.A.* 2A:15–97 (collateral source rule); *see also D'Orio v. West Jersey Health Sys.*, 797 *F.Supp.* 371 (D.N.J.1993) (holding that evidential exclusion rule in *N.J.S.A.* 39:6A–12 barred evidence at trial of amounts paid by plaintiff for medical treatment resulting from an automobile accident). And with respect to the application of *N.J.S.A.* 39:6A–8 (prohibiting recovery for non-economic injuries if standards of the verbal threshold are not met), we do not believe that limiting reimbursement to the insurers of in-state automobiles means that the operators of out-of-state motor vehicles will forfeit the defense of the verbal threshold. *See Taylor v. Rorke*, 279 *N.J.Super.* 63, 652 *A.*2d 207 (App.Div.1995) (holding that *N.J.S.A.* 17:28–1.4, which limits right of nonresident to sue for non-economic loss by automatically assigning verbal threshold tort option, does not violate Privileges and Immunities Clause); *Taylor–Segan*

*v. Rajagopal,* 275 *N.J.Super.* 286, 645 *A.*2d 1272 (App.Div.1994) (holding that *N.J.S.A.* 17:28–1.4, which imposes a verbal threshold on nonresident automobile owners who are insured under no-verbal-threshold policies written by companies licensed to do business in New Jersey, does not violate Equal Protection Clause); *Watkins v. Davis,* 268 *N.J.Super.* 211, 633 *A.*2d 112 (App.Div.1993) (holding that an automatic reformation of out-of-state policies issued by insurers doing business in New Jersey to apply verbal threshold requirements is justified by significant and legitimate public purpose, and does not violate Equal Protection Clause); *Phillips v. Phillips,* 267 *N.J.Super.* 305, 631 *A.*2d 564 (App.Div. 1993) (holding that out-of-state defendants are entitled to protections of the verbal-threshold statute). The claim for subrogation in the *Robinson* case is not against a vehicle required to maintain the full measure of PIP benefits. *N.J.S.A.* 39:6A–9.1 now allows for reimbursement in certain such instances but requires that the claims be resolved by intercompany agreement or arbitration.

The policy concerns and the probable intent of the Legislature regarding the verbal threshold, tort immunity, and subrogation, are different from the concerns regarding reimbursement from the UCJF. In one case, the issue is one of a level playing field for the conduct of litigation in New Jersey, and in the other, the issue involves an uneven playing field for entitlement to reimbursement from the UCJF. The occupants of an out-of-state car are treated the same as the occupants of an in-state car. The question is whether the insurance companies of those two cars must be treated in the same manner.

Car insurers are different from car occupants. The insurer of the out-of-state automobile has not made the same contribution to the UCJF as the in-state carrier. *N.J.S.A.* 39:6–63(d) requires the commissioner to calculate for each year the probable amount of money that will be needed to support the UCJF during the ensuing year. That amount is then assessed against insurers. An insurer's contribution is determined by the net direct written premiums each insurer bears in relation to the aggregate net

direct written premiums of all insurers. *N.J.S.A.* 39:6–62 defines "net direct written premiums" to include premiums written on motor vehicles "principally garaged" in New Jersey. We are informed that this assessment applies to commercial vehicles that are not subject to the No–Fault Law. However, commercial-vehicle insurers are required to "provide personal injury protection coverage benefits, in accordance with [*N.J.S.A.* 39:6A–4] to pedestrians * * *," *N.J.S.A.* 17:28–1.3, and buses must maintain no-fault medical expense benefits for passengers, *N.J.S.A.* 17:28–1.6. The UCJF argues that "an insurer [that] has written many policies on New Jersey automobiles will make a relatively larger contribution to the UCJF. This is appropriate, in view of the greater risk that one or more of those automobiles will be involved in an accident resulting in reimbursable medical benefits."

The legislative history of the reimbursement provisions relates to New Jersey insurers and the New Jersey insurance market. The Legislature intended those provisions to alleviate the burden of larger claims on smaller insurance companies, and to eliminate the need for large loss reserves, thereby eliminating increases in premiums necessitated by such reserves. Moreover, reimbursement is paid by the UCJF, to which insurers contribute in proportion to their percentage of the market. The relevant market is the New Jersey insurance market; insurers are assessed, and contribute to the UCJF, in proportion to their share of that market. Consequently, the relevant insurers under the reimbursement provisions are insurers writing policies on New Jersey vehicles. That history suggests that reimbursement is to be provided solely to New Jersey insurers writing policies on New Jersey automobiles.

We realize that there are sound policy reasons to favor reimbursement of the insurers of out-of-state vehicles. After all, those insurance companies are, by definition, already servicing the New Jersey market; otherwise, they would not be subject to the conformity statute. It would be very difficult to develop a formula to levy UCJF assessments against them. In addition, the insurers

of out-of-state automobiles could not have developed, with any degree of predictability, rating experience to present to their home-state regulators regarding, let us say, the rating of a $10,000 policy in Virginia that might suffer a $1,000,000 loss in New Jersey. (The maximum PIP exposure· is now $250,000.) Ultimately, it comes down to an assessment of legislative intent.

In *Roig v. Kelsey*, 135 *N.J.* 500, 641 *A*.2d 248 ·(1994), we addressed a similar issue left unresolved by the language of the amendments to the No–Fault Law. The question was whether the medical-expense deductibles, which are not reimbursable as PIP benefits, are nonetheless recoverable in a tort action against the alleged tortfeasor. The language of the No–Fault Law did not preclude such recovery. We noted, however, that legislative intent controls over plain language. *Id.* at 515, 641 *A*.2d 248.

"The inquiry [into statutory meaning] in the ultimate analysis is [to determine] the true intention of the law; and, to this end, the particular words are to be made responsive to the essential principle of the law. It is not the words but the internal sense of the law that controls . . ."

[*Id.* at 516, 641 *A*.2d 248 (quoting *Wollen v. Fort Lee*, 27 *N.J.* 408, 418, 142 *A*.2d 881 (1958)).]

To us, the "internal sense" of the law does not require the UCJF to reimburse insurers of out-of-state vehicles. We acknowledge the strength of the counterarguments, but they do not outweigh the reasons for our conclusion that reimbursement is not required in this case.

Because the issues involved in this case are close, and because very substantial sums of money turn on an assessment of the Legislature's probable intent, the Legislature is free to revise, even retroactively, our disposition and to direct reimbursement by the UCJF. *See Phillips v. Curiale*, 128 *N.J.* 608, 608 *A*.2d 895 (1992) (discussing retroactive application of legislative provisions). Because of the procedural posture of the case, we do not address the issue of administrative due process (with respect to the adoption of the UCJF's no-reimbursement policy) or the issue of a lack of equal protection due to a classification that denies reimbursement rights to the insurers of nonresident motorists. If the

Legislature agrees with our interpretation of the No–Fault Law, we are satisfied that the .UCJF's implementation of legislative intent does not require the adoption of a regulation and that its classification is reasonable.

The judgment of the Appellate Division is reversed. The judgment of the Law Division is reinstated in *Robinson*. *Martin* is remanded to the Law Division for further proceedings in accordance with this opinion.

*For reversal*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—none.